# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

LARRY JEROME SHOOTS,           *
# 03749-003,                   *
                               *
    Petitioner,     *
                               * CRIMINAL NO. 14-00162-CG-B
vs.                            * CIVIL ACTION NO. 19-00193-CG-B
                               *
UNITED STATES OF AMERICA,      *
                               *
    Respondent.     *

## REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Larry Jerome Shoots's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 42).  This matter was referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and is now ready for consideration.[1]  Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2]  Upon consideration, the undersigned

---

[1] The Honorable Senior United States District Judge Callie V.S. Granade presided over the proceedings in this action.  The undersigned has reviewed Shoots's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Senior Judge Granade.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record.  Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

hereby recommends that Shoots's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Larry Jerome Shoots. The undersigned further recommends that in the event Shoots requests a certificate of appealability and seeks to appeal *in forma pauperis,* said requests be **DENIED**.

## I. BACKGROUND

Shoots was indicted in June 2014 on three counts of interference with commerce by robbery in violation of the Hobbs Act, 18 U.S.C. § 1951. (Doc. 1). Shoots entered a plea of guilty to all three counts, pursuant to a written plea agreement. (Docs. 18, 19). As part of his plea agreement, Shoots agreed to waive his rights to challenge his guilty plea, conviction, or sentence in a direct appeal or collateral attack, except that Shoots reserved the right to appeal any sentence imposed in excess of the statutory maximum or constituting an upward departure or variance from the advisory guidelines range, and he reserved the right to raise any claim of ineffective assistance of counsel in a direct appeal or § 2255 motion. (Doc. 18 at 5-6). In January 2015, the Court sentenced Shoots to 140 months' imprisonment as to each of the three counts, with the terms to be served concurrently. (Doc. 27). Shoots did not appeal his convictions or sentence.

On July 17, 2018,[3] Shoots filed a document labeled as a petition for writ of error coram nobis. (Doc. 31). In the petition, Shoots challenged his convictions under the Hobbs Act and alleged for the first time that the statute is unconstitutionally vague, infringes upon powers reserved to the states by the Tenth Amendment, and exceeds Congress's powers under the Commerce Clause. (Id.).

After reviewing Shoots's petition, the undersigned entered an order explaining that coram nobis relief was unavailable and finding that Shoots's petition was properly construed as a § 2255 motion. (Doc. 33 at 1-2). Thus, the Court warned Shoots that it intended to recharacterize his coram nobis petition as a § 2255 motion and informed him that if he chose to proceed with such a motion, he would lose the ability to file any successive § 2255 motion without first obtaining permission from the Eleventh Circuit Court of Appeals.[4] (Id. at 3). The Court gave Shoots

---

[3] Under the mailbox rule, a prisoner's *pro se* petition is deemed filed the date it is delivered to prison officials for mailing. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). Absent evidence to the contrary, the date of delivery is assumed to be the date the prisoner signed the motion. Id. Shoots's petition for writ of error coram nobis was dated July 17, 2018. (Doc. 31 at 9).

[4] In accordance with Castro v. United States, 540 U.S. 375 (2003), and Rivas v. Warden, FCC Coleman-USP I, 711 F. App'x 585 (11th Cir. 2018) (per curiam), this Court was required to notify Shoots of the future effects of recharacterization of his petition as a § 2255 motion and give him the chance to withdraw or amend the motion.

three choices: (1) to have his petition ruled on as filed, but as a § 2255 motion; (2) to amend the petition to include any other claims he may have under § 2255; or (3) to withdraw the petition entirely. (Id.).

After Shoots failed to timely withdraw his petition or otherwise respond, the undersigned entered an order construing Shoots's petition as his first § 2255 motion and setting a briefing schedule for the parties. (Doc. 35). Thereafter, Shoots submitted a letter which appeared to express his desire to withdraw his petition. (Doc. 37). Accordingly, the undersigned construed Shoots's letter as a self-executing notice of voluntary dismissal and recommended that the case be closed. (Doc. 38). Shoots filed an objection, clarifying that he never intended for the action to be dismissed and requesting the opportunity to supplement and amend the § 2255 motion to include any other grounds he may have. (Doc. 39). In light of Shoots's clarification, the undersigned withdrew the recommendation, and the Court ordered Shoots to supplement or voluntarily withdraw his petition by June 28, 2019. (Docs. 40, 41).

On June 14, 2019, Shoots filed the instant Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Doc. 42). The Government filed a response in opposition (Doc. 45), Shoots did not reply, and Shoots's § 2255 motion is now ripe for review.

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

## III. **DISCUSSION**

In his § 2255 motion, Shoots raises two grounds for relief. First, Shoots claims that the district court lacked subject matter jurisdiction because the robberies he committed did not affect interstate commerce. (Doc. 42 at 4). Second, Shoots contends that the Hobbs Act is an unconstitutional infringement upon the powers reserved to the states by the Tenth Amendment. (Id. at 5). The Government responds that Shoots's claims are time-barred under

28 U.S.C. § 2255(f), procedurally barred by the collateral attack

waiver in Shoots's plea agreement and by Shoots's failure to raise

them previously, and without merit.  (Doc. 45).

**A.  Shoots's Claims are Time-Barred.**

**i.  Untimeliness.**

28 U.S.C. § 2255(f), which amended the Anti-Terrorism and

Effective Death Penalty Act of 1996 ("AEDPA"), provides as follows:

> A 1-year period of limitation shall apply to a motion
> under this section.  The limitation period shall run
> from the latest of--
>
>> (1) the date on which the judgment of conviction
>> becomes final;
>>
>> (2) the date on which the impediment to making a
>> motion created by governmental action in violation
>> of the Constitution or laws of the United States is
>> removed, if the movant was prevented from making a
>> motion by such governmental action;
>>
>> (3) the date on which the right asserted was
>> initially recognized by the Supreme Court, if that
>> right has been newly recognized by the Supreme
>> Court and made retroactively applicable to cases on
>> collateral review; or
>>
>> (4) the date on which the facts supporting the claim
>> or claims presented could have been discovered
>> through the exercise of due diligence.

28 U.S.C. § 2255(f).

Shoots's judgment of conviction became final on or about

January 27, 2015, upon the expiration of his fourteen-day appeal

window.  See Mederos v. United States, 218 F.3d 1252, 1253 (11th

Cir. 2000) (finding that in a § 2255 action where no timely appeal

is filed, a judgment becomes final when the time for filing an appeal expires); see also Fed. R. App. P. 4(b)(1)(A)(i). Thus, under 28 U.S.C. § 2255(f)(1), Shoots had one year from January 27, 2015 within which to file a § 2255 motion. However, Shoots did not challenge his convictions or sentence until he filed his coram nobis petition on July 17, 2018, more than three years after his judgment of conviction became final. Accordingly, if § 2255(f)(1) applies, Shoots's claims are untimely.

Because Shoots's claims are untimely under § 2255(f)(1), and he asserts no facts that support the application of § 2255(f)(2) or § 2255(f)(3) to his claims, Shoots's claims can only be found timely under § 2255(f)(4). Indeed, Shoots argues that § 2255(f)(4) applies because he "was only able to discover the flaws of counsel's failure to inform him of the elements after constantly stud[y]ing what the requirements were for an offense to be a Federal crime under the Hobbs Act statute." (Doc. 42 at 12; see also id. at 10 ("Grounds one and two were never [previously] presented . . . due to my attorney at the time failing to inform me of the elements of the offense or the nature and cause of the accusations.")).

There are several problems with Shoots's argument. First, Shoots does not actually identify any "facts" supporting his claims which he allegedly discovered within one year prior to filing his petition. Second, the record affirmatively contradicts Shoots's

assertion that he was unaware of the elements of his offenses and the nature of the accusations against him. Shoots's plea agreement included a detailed factual resume which specified the elements of his offenses (including the effect-on-commerce element) and the nature of the accusations, including setting forth facts specifically relating to the effect-on-commerce element for each robbery. (See Doc. 18 at 9-13). Shoots agreed to and signed the factual resume and specifically admitted that the three robberies he committed "caused commerce, or items in commerce to be delayed, obstructed or affected." (Id. at 13). At the end of his plea agreement, Shoots signed an acknowledgement stating:

> I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

(Id. at 8). Thus, contrary to the self-serving assertions in his § 2255 motion, Shoots was aware, or certainly should have been aware, of the elements of his offenses and the nature of the accusations against him no later than the time he signed the plea agreement and factual resume on September 15, 2014. Moreover, given that Shoots does not dispute that he committed the robberies,

he was unquestionably aware of the underlying facts of those robberies.

With respect to his claim that the district court lacked jurisdiction over his offenses because the offenses did not affect commerce, it appears that Shoots's real argument is that he lacked the knowledge or expertise to understand the legal significance of the facts that already existed at the time of his guilty plea. Similarly, with respect to his Tenth Amendment claim, Shoots implicitly avers ignorance of the law. Yet, here again, the laws, events, and circumstances that form the basis for his claim were in existence before Shoots entered a guilty plea. Shoots's alleged prior lack of understanding of the law does not bring his claims within the purview of § 2255(f)(4), because the facts underlying his claims could have been discovered with due diligence no later than the time he reviewed, signed, and agreed to the plea agreement and factual resume. See United States v. Gray, 2015 U.S. Dist. LEXIS 196927, at *3, 2015 WL 13673841, at *1 (S.D. Ala. June 15, 2015) ("Since Congress's overriding purpose in enacting § 2255's limitations period was to achieve finality in criminal cases, both federal and state, this Court cannot equate a prisoner's belated recognition of a legal theory with the discovery of a fact giving rise to a claim.") (internal citation and quotation marks omitted); Asanansi v. United States, 2014 WL 5023452, at *2 (M.D. Ala. Oct. 8, 2014) ("'Facts' as used in § 2255(f)(4) refers to an actual or

alleged event or circumstances, not to the date a petitioner recognizes its legal significance."); United States v. Azubuike, 267 F. App'x 731, 732 (10th Cir. 2008) (Gorsuch, J.) ("[T]he availability of a Section 2255(f)(4) limitations period is expressly limited to cases where 'facts'-not law-are newly discovered."). For these reasons, § 2255(f)(4) does not apply to either of Shoots's claims. Instead, § 2255(f)(1) supplies the limitations period for Shoots's claims. Under that subsection, Shoots's claims are untimely. Thus, unless Shoots can demonstrate that he is entitled to equitable tolling or another exception to the time bar, his claims are barred by the AEDPA's statute of limitations.

### ii. **Equitable Tolling.**

Equitable tolling applies to the statute of limitations set forth in 28 U.S.C. § 2255(f). Sandvik v. United States, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam); see also Holland v. Florida, 560 U.S. 631, 645 (2010) (holding that a similar statute of limitations in 28 U.S.C. § 2244(d) is subject to equitable tolling). A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649. The burden of establishing entitlement to equitable tolling rests with the petitioner. Spottsville v. Terry, 476 F.3d 1241, 1245 (11th Cir. 2007). Courts

do not accept "a lack of legal education and related confusion or ignorance about the law as excuses for a failure to file in a timely fashion." Perez v. Florida, 519 F. App'x 995, 997 (11th Cir. 2013) (per curiam) (citing Rivers v. United States, 416 F.3d 1319, 1323 (11th Cir. 2005)).

Shoots does not allege that he is entitled to equitable tolling, and the allegations in his § 2255 motion do not suggest that equitable tolling is warranted. Notably, Shoots waited approximately three-and-a-half years after the entry of judgment in his case to challenge his convictions. Cf. Johnson v. United States, 544 U.S. 295, 311 (2005) (finding the fourth paragraph of § 2255(f) unavailable to a prisoner who filed his state habeas petition more than three years following entry of judgment because his actions "fell far short of reasonable diligence in challenging the state conviction"). Shoots provides no explanation for the long delay other than his assertion that he was only able to discover his counsel's failure to inform him of the elements of his offenses after "constant" study. Given the considerable length of the delay, this conclusory allegation is insufficient to satisfy the due diligence requirement, particularly since it is contradicted by the record, which unmistakably reflects that Shoots was or should have been aware of the elements of his offenses and the nature of the accusations against him no later than the time he signed his plea agreement and factual resume.

Further, Shoots alleges no extraordinary circumstances that prevented him from timely presenting his claims. Instead, he merely suggests that he was previously unaware of the law. Therefore, equitable tolling is not warranted in this case.

### iii. Actual Innocence.

Before recommending dismissal based on untimeliness, the undersigned still must consider whether a "fundamental miscarriage of justice" has occurred, whereby "a constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" See Murray v. Carrier, 477 U.S. 478, 495-96 (1986); McQuiggin v. Perkins, 569 U.S. 383, 386 (2013) (holding that actual innocence, if proved, serves as a gateway to review of claims barred by the expiration of the AEDPA's statute of limitations). To successfully assert actual innocence as a gateway to review of time-barred claims, a habeas petitioner is required "(1) to present 'new reliable evidence . . . that was not presented at trial,' and (2) to show 'that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt' in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (per curiam) (citations omitted). The actual innocence gateway requires a petitioner to show "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998). This "standard is demanding and permits review only in the 'extraordinary' case."

<u>House v. Bell</u>, 547 U.S. 518, 538 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)).

In his § 2255 motion, Shoots asserts that he "is actual, factually innocent of a Federal crime." (Doc. 42 at 12). However, Shoots provides no explanation for this assertion, and he presents no new evidence whatsoever. Nowhere does Shoots dispute that he committed the robberies in question; he simply maintains they are not "Federal crime[s]." Therefore, the actual innocence exception does not save Shoots's § 2255 motion from being untimely.[5]

**B. Shoots's Claims are Procedurally Barred.**

In addition to being time-barred, Shoots's claims are procedurally barred because he failed to raise them on direct appeal.[6] "Generally, if a challenge to a conviction or sentence

---

[5] Although Shoots does not allege ineffective assistance of counsel as an independent ground for relief, his motion includes a number of vague assertions disparaging the performance of his appointed counsel at the trial court level. (See Doc. 42 at 4, 10, 12). To the extent any of these contentions can be construed to assert a claim for constitutionally ineffective assistance of counsel, these claims, like Shoots's substantive claims, are time-barred under 28 U.S.C. § 2255(f). Moreover, such claims are without merit and are affirmatively contradicted by the record.

[6] The Government also argues that Shoots's claims are barred by the collateral attack waiver in his plea agreement. (Doc. 45 at 9-10). Collateral attack waivers are valid if made knowingly and voluntarily. <u>Williams v. United States</u>, 396 F.3d 1340, 1341 (11th Cir. 2005). They are enforceable if the Government shows that either "(1) the district court specifically questioned the defendant concerning the [collateral attack] waiver during the [plea] colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver." <u>Id.</u> (quotation omitted). Because the transcript of

is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279–80 (11th Cir. 2005) (per curiam). "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills v. United States, 36 F.3d 1052, 1055 (11th Cir. 1994) (per curiam).

As noted *supra*, Shoots chose not to pursue a direct appeal. Had he done so, he could have raised his jurisdictional and Tenth Amendment claims relating to his convictions under the Hobbs Act without further factual development. See, e.g., United States v. Gray, 260 F.3d 1267, 1269–70 (11th Cir. 2001) (affirming conviction for Hobbs Act robbery on appeal when the appellant argued that the Government failed to prove that his conduct had sufficient effect on interstate commerce, as required by the Hobbs Act); United States v. Sejour, 747 F. App'x 825, 826 (11th Cir.) (per curiam), cert. denied, 139 S. Ct. 1465 (2019) (rejecting appellant's argument that "his robbery did not have a large enough effect on interstate commerce to support federal jurisdiction under the Hobbs Act and the Commerce Clause"); United States v. Fredericks, 684 F. App'x 149, 163–64 (3d Cir. 2017) (considering appellant's argument "that 'to allow an application of the Hobbs Act to the

---

Shoots's plea colloquy is not included in the record and Shoots's claims are due to be dismissed on other grounds, the undersigned need not reach this issue.

facts of [this] case would transform Hobbs Act robbery into a general police power the likes of which has been repeatedly rejected by the Supreme Court . . . and thus violates the Tenth Amendment[,]'" and finding that because "Congress enacted the Hobbs Act in valid exercise of its constitutional authority, application of the Hobbs Act to this case does not violate the Tenth Amendment"); United States v. Simpson, 659 F. App'x 158, 160-61 (4th Cir. 2016) (per curiam) (rejecting appellant's arguments that the district court erred in denying his motion to dismiss indictment under the Hobbs Act for lack of federal jurisdiction and that his prosecution violated the Tenth Amendment by criminalizing a matter reserved to the States). Because Shoots did not raise his claims on direct appeal, his claims are procedurally barred.

If a defendant fails to pursue an available claim on direct appeal, he can avoid a procedural bar only by establishing one of two exceptions to the procedural default rule. "Under the first exception, a defendant must show cause for not raising the claim of error on direct appeal *and* actual prejudice from the alleged error." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (per curiam) (emphasis in original). To demonstrate cause, a petitioner must "show that 'some objective factor external to the defense impeded counsel's efforts to comply with the . . . procedural rule,' or that his attorney's performance failed to

meet the Strickland standard for effective assistance of counsel."
Reece v. United States, 119 F.3d 1462, 1465 (11th Cir. 1997)
(citation omitted).  To demonstrate prejudice, a petitioner must
"shoulder the burden of showing, not merely that the errors at his
trial created a *possibility* of prejudice, but that they worked to
his *actual* and substantial disadvantage, infecting his entire
trial with error of constitutional dimensions."  United States v.
Frady, 456 U.S. 152, 170 (1982) (emphasis in original).

There is no showing of cause in the instant case.  Shoots
merely asserts, in the face of clear record evidence to the
contrary, that he was not informed of the elements of the offenses
to which he pled guilty and was only able to discover the
jurisdictional interstate commerce element of the Hobbs Act after
years of constant study.  This is insufficient to overcome his
procedural default through the cause and prejudice exception.

Under the second exception to the procedural default rule, a
petitioner must show that "a constitutional violation has probably
resulted in the conviction of one who is actually innocent."  Lynn,
365 F.3d at 1234 (quotation omitted).  As previously noted, Shoots
has come forward with no evidence that establishes his actual
innocence; instead, he simply states that he is "actual, factually
innocent of a Federal crime."  (Doc. 42 at 12).  This vague,
conclusory, and meritless assertion simply does not constitute a
viable actual innocence argument.  See Dunkerley v. Estes, 2014

U.S. Dist. LEXIS 91627, at *5 n.2, 2014 WL 3063563, at *2 n.2 (S.D. Ala. July 7, 2014) ("Petitioner argued that he is actually innocent because the statute under which he was convicted is unconstitutional. That is a claim of legal insufficiency and, as such, does not satisfy the actual innocence exception."). Accordingly, Shoots cannot overcome the procedural default of his claims.

**C.   Shoots's Claims Lack Merit.**

Assuming *arguendo* that Shoots's claims were not untimely and procedurally barred, they would nevertheless fail because they are entirely devoid of merit.   The Hobbs Act provides, in relevant part, that "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery . . . shall be fined under this title or imprisoned not more than twenty years, or both."   18 U.S.C. § 1951(a).   The Hobbs Act then defines the term "commerce" to mean "commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."   Id. at § 1951(b)(3).   "Two elements are essential for a Hobbs Act

prosecution: robbery and an effect on commerce." United States v. Rodriguez, 218 F.3d 1243, 1244 (11th Cir. 2000) (per curiam).

Shoots correctly notes that a central feature of a Hobbs Act crime is an effect on commerce, and he asserts as his first ground for relief that the district court lacked subject matter jurisdiction over his offenses because his actions "never affected" interstate commerce. (Doc. 42 at 4). The Supreme Court has noted that the language of the Hobbs Act is "unmistakably broad," reaching "any obstruction, delay, or other effect on commerce, even if small," and encompassing "'all . . . commerce over which the United States has jurisdiction.'" Taylor v. United States, 579 U.S. 301, 305 (2016) (quoting 18 U.S.C. § 1951(b)(3)). This language "indicates Congress's intent to invoke its full authority under the Commerce Clause." Gray, 260 F.3d at 1275. The Eleventh Circuit has "repeatedly held that, consistent with broad federal authority to regulate commerce, the Government need only 'establish a minimal effect on interstate commerce to support a violation of the Hobbs Act.'" Sejour, 747 F. App'x at 826 (quoting Rodriguez, 218 F.3d at 1244); see United States v. Dean, 517 F.3d 1224, 1228 (11th Cir. 2008) ("[T]he government is only required to establish a minimal effect on interstate commerce.") (quotation omitted); Gray, 260 F.3d at 1276 ("[I]t is of no moment to the analysis whether the effect is characterized as 'direct' or

indirect'—if the defendant's conduct had a *minimal* effect on commerce, nothing more is required.") (emphasis in original).

Shoots's plea agreement incorporated a factual resume that, for each robbery count, listed specific facts relating to the effect-on-commerce element. For count one — a December 2013 robbery of a Dollar General Store in Foley, Alabama — the factual resume stated that Shoots was given $823 from the store's safe and cash register, and that the store received a weekly shipment of products from its distribution center in Alachua, Florida and weekly shipments of Pepsi and Nestle products from Pensacola, Florida. (Doc. 18 at 10-11). For count two — a February 2014 robbery of an Approved Cash Advance store in Foley, Alabama — the factual resume stated that Shoots fled with $4,286, that the store's corporate headquarters were located in Cleveland, Tennessee, that all of the store's supplies were delivered from Tennessee, and that if a customer was approved for a loan and there was not enough cash on hand, corporate headquarters in Tennessee would fax a bank letter to a BB&T bank located in Foley, which would provide additional cash for the customer's loan. (Id. at 11-12). For count three — a February 2014 robbery of another Dollar General Store in Foley, Alabama — the factual resume stated that Shoots was given $793 from the store's safe, and that the store received weekly product shipments from its distribution center in Alachua, Florida and weekly shipments of Pepsi and Frito-

Lay products from Pensacola, Florida. (Id. at 12). The factual resume concluded as follows:

> **LARRY JEROME SHOOTS** admits that he violated 18 U.S.C. § 1951(a) when he forcibly, by use of a firearm, took property from persons at each of the above-described businesses, and that these three robberies caused commerce, or items in commerce to be delayed, obstructed or affected.

(Id. at 13). Just below that paragraph, Shoots, his attorney, and the Government's attorneys signed and agreed to the factual resume. (Id.). Additionally, Shoots specifically stipulated in his plea agreement that the incorporated factual resume was true and accurate in every respect, and that the Government could prove the facts set forth in the factual resume beyond a reasonable doubt. (Id. at 8).

Despite those stipulations, Shoots now contends that "interstate commerce was never affected to bring [his] conduct within the federal government jurisdiction of a Hobbs Act crime pursuant to § 1951(a)." (Doc. 42 at 4). Shoots makes no fact-specific argument as to why his robberies did not have a sufficient impact on interstate commerce to support federal jurisdiction under the Hobbs Act and the Commerce Clause. Instead, he appears to make the generic argument that robbery is a local crime falling within the scope of police powers reserved to the states. (See id. at 4-5).

Shoots's contentions lack merit and are belied by the record. The factual resume, to which Shoots stipulated as part of his plea agreement, shows that each business Shoots robbed was engaged in interstate commerce, and that Shoots robbed the stores of $823, $4,286, and $793, respectively.  See United States v. Paredes, 139 F.3d 840, 841, 844-45 (11th Cir. 1998) (finding sufficient effect on interstate commerce where defendants robbed two local convenience stores, which were not connected with any out-of-state store chain but sold "some" items manufactured out of state, and obtained one case of beer, a carton of cigarettes, and less than $170 in cash), superseded on other grounds as recognized in United States v. Brown, 332 F.3d 1341 (11th Cir. 2003); United States v. Griffin, 724 F. App'x 808, 810, 813 (11th Cir. 2018) (per curiam) (finding sufficient interstate nexus where defendants stole $695.50 from a bar and its patrons, and the evidence established that the bar regularly ordered beer brewed out-of-state).  The Eleventh Circuit has found that a "mere 'depletion of assets' of a business engaged in interstate commerce will meet" the Government's requirement to establish a minimal effect on interstate commerce to support a Hobbs Act violation.  Rodriguez, 218 F.3d at 1244 (citing United States v. Guerra, 164 F.3d 1358, 1360 (11th Cir. 1999)); see also United States v. Jackson, 748 F.2d 1535, 1537 (11th Cir. 1984) (explaining that under the "depletion of assets" theory, "commerce is affected when an

enterprise, which either is actively engaged in interstate commerce or customarily purchases items in interstate commerce, has its assets depleted through extortion, thereby curtailing the victim's potential as a purchaser of such goods") (quotation omitted); Griffin, 724 F. App'x at 813 (finding that a reasonable jury could infer that the victimized business "had less money to spend in interstate commerce as a result of the robbery, thereby establishing a minimal effect on interstate commerce"); Gray, 260 F.3d at 1276-77 (holding that evidence of an unspecified amount of money stolen from a cash register and disruption in normal business hours caused by robbery were sufficient to prove a minimal effect on interstate commerce). In view of the law and facts set forth above, it is clear that each of Shoots's robberies had at least a minimal effect on interstate commerce, which was sufficient to support his charges under the Hobbs Act.

As his second ground for relief, Shoots contends that Congress exceeded its power and violated the Tenth Amendment by enacting the Hobbs Act, because the Commerce Clause "does not authorize Congress to punish robbery." (Doc. 42 at 5). Shoots's claim is without merit. The Eleventh Circuit has "held that Congress does not violate the Tenth Amendment when it enacts legislation through the constitutionally permissible exercise of its Commerce Clause power." United States v. Edwards, 447 F. App'x 43, 46-47 (11th Cir. 2011) (per curiam) (citing Cheffer v. Reno, 55 F.3d 1517,

1521 (11th Cir. 1995)).  And federal courts have repeatedly recognized that the Hobbs Act "is clearly within the power of Congress and does not infringe the Tenth Amendment." United States v. Brito, 2012 U.S. Dist. LEXIS 18167, at *19, 2012 WL 484829, at *6 (N.D. Ga. Feb. 9, 2012); see, e.g., United States v. Bailey, 990 F.2d 119, 126 (4th Cir. 1993) ("The Hobbs Act is a well recognized federal statute, and the Tenth Amendment does not prohibit the federal government from enforcing its laws, even when there are state laws addressing the same criminal act."); United States v. Jarrett, 705 F.2d 198, 203 (7th Cir. 1983) ("The Hobbs Act presents no unconstitutional intrusion upon the sovereignty of the states and, thus, is a constitutional exercise of the commerce power."); Fredericks, 684 F. App'x at 163 ("The Hobbs Act requires a nexus to interstate commerce and is, therefore, a valid exercise of federal government power under the Commerce Clause.").  "Rather than regulate the internal functions of the states, the Hobbs Act regulates the activities of individuals.  Furthermore, the Hobbs Act does not *displace* the states' freedom to prosecute robberies or extortions." Jarrett, 705 F.2d at 203 (emphasis in original). Because Congress enacted the Hobbs Act in valid exercise of its commerce power under the Constitution, Shoots's second ground for relief is without merit.

## IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, the undersigned recommends that a certificate of appealability in this case be **DENIED**. See Rule 11(a), Rules Governing Section 2255 Proceedings ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."). The habeas corpus statute makes clear that an applicant is entitled to appeal a district court's denial of his habeas corpus petition only where a circuit justice or judge issues a certificate of appealability. See 28 U.S.C. § 2253(c)(1). A certificate of appealability may be issued only where "the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).

When a habeas petition is dismissed on procedural grounds without reaching the merits of an underlying constitutional claim, a certificate of appealability "should issue [only] when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Where a habeas petition is denied on the merits of the underlying constitutional claims, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists

would find the district court's assessment of the constitutional claims debatable or wrong."  Id.; accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Shoots's § 2255 motion does not warrant the issuance of a certificate of appealability, as his claims are clearly time-barred and procedurally barred, and he has failed to make any showing that would permit review of his untimely and procedurally defaulted claims.  Under the facts of this case, a reasonable jurist could not conclude either that this Court is in error in dismissing the instant petition or that Shoots should be allowed to proceed further.  See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  Further, reasonable jurists could not debate whether Shoots's claims should be resolved in a different manner on their merits.  As a result, Shoots is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed in forma pauperis on appeal.

## V. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Larry Jerome Shoots's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. 42) be **DISMISSED with**

**prejudice** as time-barred.  In addition, the claims raised in Shoots's motion are procedurally barred based on Shoots's failure to raise them on direct appeal.  Alternatively, Shoots's claims are due to be **DENIED** on their merits for the reasons set forth above.  It is further recommended that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Larry Jerome Shoots.  Finally, the undersigned submits that Shoots is not entitled to the issuance of a certificate of appealability and is not entitled to proceed *in forma pauperis* on appeal.

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on

appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **27th** day of **January, 2022.**

_____/s/ SONJA F. BIVINS_____
UNITED STATES MAGISTRATE JUDGE
